IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JOSE VILLAFANE-SANTIAGO et al.**, <br>    Plaintiffs, <br><br> v. <br><br> **THE FACILITATORS: CAMP IRONHORSE et al.**, <br>    Defendants. | Civil No. 21-1261 (BJM) |

## OPINION & ORDER

Plaintiffs Jose Villafane-Santiago *et al*. ("Plaintiffs") bring the overlying action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and local laws against defendants the Federal Emergency Management Agency ("FEMA") and The Facilitators: Camp Ironhorse Inc. ("TFCI"), a nonprofit corporation based in Oklahoma. Plaintiffs allege that they have not been paid in accordance with the FLSA and local laws and request unpaid wages pursuant to 29 U.S.C. § 201 *et seq*., unpaid accrued vacation time and bonuses pursuant to 3 L.P.R.A. § 501 *et seq*. and 29 L.P.R.A. § 250, penalty fees pursuant to 29 U.S.C. § 216, and tort damages pursuant to Article 1536 of the Civil Code of Puerto Rico. Dkt. 8. FEMA has moved to dismiss the complaint as it pertains to FEMA pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, sovereign immunity, and failure to exhaust administrative remedies. Dkt. 21. Plaintiffs oppose FEMA's motion but acknowledge that their local law and tort claims are not applicable to FEMA. Dkt. 31 at 15. FEMA has replied to Plaintiffs' motion in opposition, Dkt. 40, and Plaintiffs have entered a surreply. Dkt. 45. The parties have consented to proceed before me. Dkt. 36 at 32; Dkt. 41; Dkt. 42. For the reasons set forth below, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

Case 3:21-cv-01261-BJM   Document 62   Filed 04/12/22   Page 2 of 11

*Villafane-Santiago et al. v. The Facilitators: Camp Ironhorse et al.*, Civil. No. 21-1261 (BJM)        2

## APPLICABLE LEGAL STANDARDS

FEMA makes the present motion in accordance with Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). "Motions brought under Rule 12(b)(1) and Rule 12(b)(6) are subject to the same standard of review." Hart v. Mazur, 903 F.Supp. 277, 279 (D.R.I. 1995).

12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The "party invoking the jurisdiction of a federal court carries the burden of proving its existence." *P.R. Tel. Co. v. Telecomm's Reg. Bd. of P.R.*, 189 F.3d 1, 7 (1st Cir. 1999). When deciding whether subject-matter jurisdiction exists, the court follows two general rubrics: (1) when a defendant challenges the legal sufficiency of the facts alleged, the court credits plaintiffs' factual allegations and draws reasonable inferences in his or her favor; and (2) when the defendant challenges the truth of facts alleged by the plaintiff and offers contrary evidence, the court weighs the evidence. *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). "While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

When faced with a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court "accept[s] as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences therefrom in the pleader's favor" to determine if the complaint states a claim for which relief can in fact be granted. *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011). The court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the countercomplaint, matters of public record, and facts susceptible to judicial notice." *Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc.*, 920 F.3d 111, 114 (1st Cir. 2019) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011))

Case 3:21-cv-01261-BJM   Document 62   Filed 04/12/22   Page 3 of 11

*Villafane-Santiago et al. v. The Facilitators: Camp Ironhorse et al.*, Civil. No. 21-1261 (BJM)  3

(internal quotations omitted). In undertaking this review, the court must first "'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[,]' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'" *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alteration in original) (quoting *Zenón v. Guzmán*, 924 F.3d 611, 615–16 (1st Cir. 2019)). "Plausible … means something more than merely possible," and gauging the plausibility of a claim for relief is "a 'context-specific' job" that requires drawing on "'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## FINDINGS OF FACT

The following facts are drawn from the amended complaint, Dkt. 8. Where there are legitimate conflicts apparent in the record regarding factual assertions, I have noted these conflicts. Plaintiffs have frequently mixed legal assertions with factual assertions in their filings; I have considered the intermingled factual assertions where possible, but I have excised conclusory legal assertions from this section. *See, e.g., Papasan v. Allain*, 478 U.S. 265, 286 (1986) (when considering a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

On June 1, 2018, FEMA published a notice entitled "Opportunity for Funding for Disaster Case Management in Puerto Rico." This invitation provided that funded entities would "implement and provide disaster case management in support of disaster survivors in the Commonwealth of Puerto Rico" and stated that they would "be selected to provide services to a population of approximately 23,000 across the 78 municipalities [of Puerto Rico]." The application invitation

Case 3:21-cv-01261-BJM   Document 62   Filed 04/12/22   Page 4 of 11

*Villafane-Santiago et al. v. The Facilitators: Camp Ironhorse et al.*, Civil. No. 21-1261 (BJM)            4

also said that "FEMA will serve as both the managing entity and the award oversight agency for this program and be assigned to the FEMA Region II office and the Joint Recovery Office/LongTerm Recovery Office in Puerto Rico."

TFCI submitted an application to FEMA. The proposal was accepted by FEMA via a letter dated July 27, 2018, which stated that TFCI would receive $7,855,680.00 to perform services on behalf of disaster victims for one year.

Plaintiffs were hired by TFCI pursuant to the agreement between FEMA and TFCI in order to perform public services on behalf of disaster victims in Puerto Rico. Under their contracts, Plaintiffs' regular schedule was eight hours a day and forty hours a week, and Plaintiffs were entitled to accrued vacations and a non-discretionary Christmas bonus. Some of the plaintiffs were also entitled to reimbursements for work-related travel. Payroll cycles were biweekly.

Plaintiffs claim that under the agreement between TFCI and FEMA, FEMA was supposed to pay Plaintiffs' salaries via a reimbursement method, but FEMA claims that this is a mistaken belief on Plaintiffs' part. FEMA's application invitation (attached to FEMA's countercomplaint) denotes that "[f]unding will be awarded on a reimbursable basis to recipients based on receipts and invoices submitted" and that there is "no set period for reimbursement"; rather, requests for reimbursement could be "submitted at the convenience of the recipient." It appears likely that FEMA did not pay or determine Plaintiffs' salaries directly but instead generally agreed to reimburse TFCI when TFCI submitted receipts and invoices to FEMA in line with the agreement; however, this is not entirely clear. Plaintiffs state that TFCI requested reimbursement from FEMA in order to pay Plaintiffs' salaries, but that FEMA refused to provide the reimbursement.

From on or around June 6, 2019 until on or before September 30, 2019, all plaintiffs worked for TFCI. Plaintiffs were dismissed due to termination of the agreement between FEMA and TFCI.

*Villafane-Santiago et al. v. The Facilitators: Camp Ironhorse et al.*, Civil. No. 21-1261 (BJM)            5

Plaintiffs did not receive any of the following: compensation (wages or salaries) for their work subsequent to June 5, 2019; a Christmas bonus; payment for their accrued vacation time; or reimbursement for work-related travel.

## DISCUSSION

I note at the outset that Plaintiffs have acknowledged that their tort and local law claims do not apply to FEMA. Dkt. 31 at 15. As a result, I will not consider these claims when ruling upon the present motion and I will grant FEMA's motion to dismiss those claims. I will not consider FEMA's argument that Plaintiffs have failed to exhaust administrative remedies; FEMA made that argument in response to Plaintiffs' local law and tort claims, and so it is no longer applicable here.

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." *Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir. 1995). I shall therefore first turn to the 12(b)(1) subject matter jurisdiction issue.

### A.  Rule 12(b)(1) Issue

When considering subject matter jurisdiction, FEMA must meet a particularly tough standard to prevail on the argument that Plaintiffs have not demonstrated that FEMA was their employer. "It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id*. (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666

Case 3:21-cv-01261-BJM   Document 62   Filed 04/12/22   Page 6 of 11

*Villafane-Santiago et al. v. The Facilitators: Camp Ironhorse et al.*, Civil. No. 21-1261 (BJM)        6

(1974)). As discussed at greater length in the section on 12(b)(6) below, Plaintiffs' claim is not without substance and in fact has merit. Furthermore, Plaintiffs allege that the District of Puerto Rico has subject matter jurisdiction over the case against FEMA because federal courts have jurisdiction in FLSA claims and Plaintiffs had an employment relationship with FEMA; FEMA does broadly dispute the merits of these allegations, but FEMA does not even imply that the claim raised by Plaintiffs is somehow "completely devoid" of merit or fully foreclosed by prior decisions. As a result, I decline to dismiss the case for lack of subject matter jurisdiction due to any "inadequacy" with Plaintiffs' federal claim and shall consider FEMA's argument that Plaintiffs' claim lacks merit under 12(b)(6) instead.

FEMA next argues that Plaintiffs lack Article III standing to bring their claim against FEMA. "[In order] to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81. FEMA claims that Plaintiffs have failed to establish that their injury is fairly traceable to FEMA. However, Plaintiffs have sufficiently alleged that FEMA played a role in causing their injury. Again, when ruling on a 12(b)(1) motion I will credit Plaintiffs' factual allegations and draw reasonable inferences in their favor where FEMA does not challenge those factual allegations; here, Plaintiffs have alleged that TFCI relied on funding from FEMA in order to pay Plaintiffs, that FEMA withheld funding from TFCI, and that Plaintiffs were not paid as a result, allegations that go essentially unchallenged by FEMA. As a result, I decline to find that Plaintiffs lack standing.

Case 3:21-cv-01261-BJM   Document 62   Filed 04/12/22   Page 7 of 11

*Villafane-Santiago et al. v. The Facilitators: Camp Ironhorse et al.*, Civil. No. 21-1261 (BJM)                                    7

FEMA additionally claims that sovereign immunity prevents Plaintiffs from suing FEMA, but this is not the case either. The United States (including government agencies like FEMA) has clearly waived sovereign immunity for the purpose of FLSA claims. *See, e.g.*, *Richmond v. United States*, 151 Fed. Cl. 163, 169 (2020) ("defendant has waived sovereign immunity as to plaintiffs' claims, as it has with all FLSA claims"). FEMA states that Plaintiffs did not actually identify a waiver of sovereign immunity in their amended complaint, but in fact Plaintiffs specifically cite 29 U.S.C.A. § 216, which states that an FLSA action "may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction . . . ." I therefore decline to hold that sovereign immunity prevents Plaintiffs from suing FEMA.

FEMA's 12(b)(1) arguments are unavailing. As a result, I turn to FEMA's 12(b)(6) argument for dismissal due to failure to state a claim upon which relief can be granted.

**B.  Rule 12(b)(6) Issue**

FEMA claims that Plaintiffs have failed to state a claim under which relief can be granted because Plaintiffs cannot demonstrate that FEMA was their employer. To succeed on a FLSA claim, Plaintiffs must demonstrate that: (1) the workers in question were employed by Defendants; (2) Defendants engaged in commerce or in the production of goods for commerce ("enterprise coverage"); and (3) the workers were undercompensated for the work they performed. 29 U.S.C. §§ 206(a); 207(a)(1). *See also Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013). "The FLSA contemplates several simultaneous employers, each responsible for compliance with the Act." *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998). In order to determine whether an employment relationship exists for the purposes of federal welfare legislation, "courts look not to the common law conceptions of that relationship, but rather to the 'economic reality' of the totality of the circumstances bearing on whether the putative employee

Case 3:21-cv-01261-BJM   Document 62   Filed 04/12/22   Page 8 of 11

*Villafane-Santiago et al. v. The Facilitators: Camp Ironhorse et al.*, Civil. No. 21-1261 (BJM)                8

is economically dependent on the alleged employer." *Id*. The following four factors provide a useful framework for evaluating the economic reality of the totality of the circumstances in this context: "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Id*.

As Plaintiffs note, the four-factor test for determining whether an entity is an employer or joint employer is very fact-dependent, and the factors merely provide a useful framework for determining whether an entity is an employer rather than being entirely dispositive. *See, e.g.*, *id.* at 676 ("In any event, it is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer"). The appropriate weight to give to each factor will necessarily vary, and not all of the factors need to be present for an entity to be considered an employer. Since Plaintiffs have invoked this court's jurisdiction, however, they bear the burden of showing that they have stated a plausible claim for relief. However, this burden is not high, and the fact-dependent nature of the test means that if Plaintiffs have plausibly alleged that one or more factors from the test are present without being contradicted, then it would be difficult to say that FEMA is not an employer or joint employer without weighing the strength of uncontroverted facts. That is not the court's job at this stage in the proceedings.

Turning to the first factor, Plaintiffs have not alleged facts suggesting that FEMA had the power to hire and fire employees. Though Plaintiffs have said via affidavit that FEMA kept abreast of who was hired and claim that there was a general "understanding" or sense that FEMA could fire employees as well, in the complaint itself, Plaintiffs note only that TFCI hired them, though they do state that FEMA generally delegated functions to TFCI. Even viewing the allegations in

Case 3:21-cv-01261-BJM   Document 62   Filed 04/12/22   Page 9 of 11

*Villafane-Santiago et al. v. The Facilitators: Camp Ironhorse et al.*, Civil. No. 21-1261 (BJM)          9

the complaint in the light most favorable to Plaintiffs, then, there is currently no indication that the first factor is present.

Similarly, regarding the fourth factor, Plaintiffs do not appear to allege maintenance of employment records by the purported employer here. Since there is no indication that FEMA maintained employment records, at least as far as Plaintiffs or TFCI are concerned, Plaintiffs have not plausibly alleged that the fourth factor is present either.

However, Plaintiffs have adequately alleged the presence of the second and third factors. Regarding the third factor, Plaintiffs have alleged some facts that suggest that FEMA played a role in determining Plaintiffs' salary rates and method of payment. For instance, in the complaint Plaintiffs state that FEMA paid the salaries of Plaintiffs via a reimbursement method. Looking to documents accompanying the countercomplaint in order to augment this statement (in accordance with *Starr Surplus Lines*, 920 F.3d at 114), the statement finds partial support in materials provided by FEMA. While these materials tend to suggest (but fall short of actually showing) that FEMA did not pay or determine Plaintiffs' salaries directly, but instead generally agreed to reimburse TFCI for expenditures, alleged facts are construed in favor of the non-moving party when ruling on a motion to dismiss. As a result, it remains plausible that FEMA directly paid the salaries of Plaintiffs as Plaintiffs seem to imply. Regardless, even if the materials were not construed in Plaintiffs' favor, they still at least arguably suggest that FEMA played a role in determining the method of salary payment to Plaintiffs, as Plaintiffs have sufficiently alleged that their salaries were meant to be paid either directly or indirectly via money obtained through reimbursement from FEMA. *But cf. Sigui v. M + M Commc'ns, Inc.*, 310 F.Supp.3d 313, 332 (D.R.I. 2018) (noting that an employee's income will always be determined and influenced by what a contractor pays the

direct employer of the employee, but that such circumstances do not establish that the contractor controls the employee's wages).

The second factor, or whether FEMA played a role in controlling or supervising employee work schedules or conditions of employment, falls even more clearly in Plaintiffs' favor. It is obvious that FEMA did not directly control or supervise Plaintiffs' work from on-site, but it is also clear that "the absence of direct, on-site supervision does not preclude a determination that plaintiffs are the employers of the temporary workers within the broad definition of the FLSA." *Baystate*, 163 F.3d at 676. In the complaint, Plaintiffs primarily offer conclusory statements when alleging that FEMA controlled or supervised their work schedules and conditions of employment, stating that as the "Joint Employer" of Plaintiffs, FEMA played a role in assigning the employee functions of Plaintiffs and delegating functions to TFCI, but without explaining what this looked like in practice. Moreover, Plaintiffs do not appear to allege that FEMA played a role in controlling or supervising employee work schedules.

However, Plaintiffs' complaint does sufficiently imply that FEMA at minimum had an oversight role over Plaintiffs, and FEMA's countercomplaint and attached exhibits suggest that FEMA had a role in controlling or supervising Plaintiffs' conditions of employment. Plaintiffs note in the complaint that FEMA's notice regarding the disaster case management opportunity that TFCI took on states that FEMA will serve as an "oversight agency" for the program as well as the "managing entity." Meanwhile, FEMA has attached evidence to the countercomplaint, which again I look to in order to augment my view of Plaintiffs' allegations in accordance with *Starr Surplus Lines*, 920 F.3d at 114, that suggests that FEMA required TFCI to hire a certain ratio of employees for most roles, set specific requirements as to the number of individuals hired for other roles, included general requirements regarding where people should be hired from, and had

Case 3:21-cv-01261-BJM   Document 62   Filed 04/12/22   Page 11 of 11

*Villafane-Santiago et al. v. The Facilitators: Camp Ironhorse et al.*, Civil. No. 21-1261 (BJM)     11

requirements as to employee roles in general. Dkt. 21-3 at 15-17. Given these factors, Plaintiffs have sufficiently alleged that FEMA played a role in supervising their conditions of employment.

Given that the test for determining whether an entity is an employer or joint employer is inevitably highly fact-dependent, that no one factor of the test is necessarily dispositive but conversely the absence of any particular factor or factors is not dispositive either, and that Plaintiffs have articulated facts suggesting that at least two of the four factors from the test may be present, I find that Plaintiffs have plausibly narrated a claim for relief. *Cf. Rios-Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 25 (noting that the 12(b)(6) plausibility standard is intended to screen out claims in which the factual allegations of the complaint are too scanty or too vague to render the claims plausible, not to "pierce the boilerplate" of the pleadings and assay the parties' proof). Plaintiffs are far from proving their case, but they have sufficiently alleged facts and claims that warrant discovery in order to help determine whether or not their claims are justified. Accordingly, FEMA's motion to dismiss must be denied except as to Plaintiffs' local and tort law claims.

## CONCLUSION

For the foregoing reasons, FEMA's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' local and tort law causes of action are dismissed as they pertain to FEMA, but Plaintiffs' other claims remain active.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of April 2022.

                                       *S/ Bruce J. McGiverin*
                                       BRUCE J. MCGIVERIN
                                       United States Magistrate Judge