**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Vernaliz Meredith Perez, et al., Plaintiffs, v. The Federal Emergency Management Agency (FEMA), The Facilitators: Camp Ironhorse Inc., and Insurance Carrier X, Defendants. | Civil No. 21-1230(GMM) cons. Civil No. 21-1261 (GMM) |
| Jose Villafane-Santiago, et al., Plaintiffs, v. The Federal Emergency Management Agency (FEMA), The Facilitators: Camp Ironhorse Inc., and Insurance Carrier X, Defendants. | |

**OPINION AND ORDER**

The instant dispute is one in which Plaintiff workers[1] seek compensation, back pay, unpaid vacation time and bonuses, and penalties under the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"), and Puerto Rico law. Before the Court is Co-defendant

---

[1] Plaintiffs are: Vernaliz Meredith Perez; Juan F. Cruz Toledo; Yadhira Aponte Colon; Gabriela Mary Rivera Reyes; Norma Angelica Muñoz Torres; Brenda Milagros Feliciano Solero; Francisco Javier Alvarado Laguna; Muriel Constanza Chabert-Lopez; Ángel Manuel Rivera Avilés; Nadja Marie González Elías; María Milagros García Sierra; Graciela Padro Pozzi; Francheska Bellerose Rodriguez; Luis Aponte Ortega; Francisco Javier Correa Lebrón; María V. Santos González; Iliali Rivera Lugo; Jessica Muñoz Ocasio; Belkys Rodríguez Montañez; Norman Jesús Kraus López; Carmen Cruz; Carmen Nanette Beltrán-Dones; Veronica Ortega; Ashley Ortiz Chico; Keila Montenegro; Viviana Torres; Lymari Torres Vechini; Wilson Santana; Nitza B. Perez; Hector Rafael Vazquez; Myriam Yadhira Molano; Jose Ignacio Rodriguez Nieves; Irving Rodriguez; Tammy Hernandez; Alberto Vigo; Melanie Vignau; Aynette Carrion Pabon; Jose Antonio Vazquez; Jose Javier Martir; and Jose J. Roldan Zeno (collectively "Plaintiffs").

Civil No. 21-1230 (GMM)
Page - 2 -

the United States of America ("United States") on behalf of the Federal Emergency Management Agency's ("FEMA") *Motion for Summary Judgment* (Docket No. 116) and Plaintiffs' *Motion for Summary Judgment*. (Docket No. 114). For the reasons stated herein, the Court **GRANTS** FEMA's *Motion for Summary Judgment* and **DENIES** Plaintiffs' *Motion for Summary Judgment*.

## I.    PROCEDURAL BACKGROUND

This case was originally filed in the Court of First Instance of the Commonwealth of Puerto Rico, Superior Court of San Juan, case Number SJ2019CV10684. On May 19, 2021, Defendants FEMA, the United States, and The Facilitators: Camp Ironhorse, Inc. ("TFCI") filed a *Notice of Removal* pursuant to 28 U.S.C. § 1441(a), which provides federal jurisdiction for suits against agencies of the United States. (Docket No. 1). On August 31, 2021, FEMA and the United States filed a *Motion to Dismiss Amended Complaint and Opposition to Plaintiffs' Request for Leave to Amend the Complaint* ("First Motion to Dismiss"). (Docket No. 14). On March 31, 2022, the Court denied the First Motion to Dismiss without prejudice and granted Plaintiffs leave to amend the Complaint. (Docket No. 37).

On April 19, 2022, Plaintiffs filed their *Amended Complaint* ("First Amended Complaint"). (Docket No. 42). On August 19, 2022, FEMA and the United States filed a *Motion to Consolidate Proceedings* requesting that the Court consolidate the instant case with the junior case, Civil Case No. 21-1261 (BJM), <u>Jose Villafane-</u>

Civil No. 21-1230 (GMM)
Page - 3 -

Santiago, et al, v. The Facilitators: Camp Ironhorse, Inc., and the Federal Emergency Management Agency). (Docket No. 51). On October 27, 2022, Plaintiffs consented to FEMA and the United States' *Motion to Consolidate Proceedings*, and on the following day the Court effectively consolidated the two cases. (Docket Nos. 51; 58; 59).

Finally, on February 1, 2023, at the Court's behest, Plaintiffs filed the *Second Amended Complaint*. (Docket No. 77). Therein, Plaintiffs alleged that all Defendants owed them unpaid wages and penalties pursuant to the FLSA. (Id. at 18-19). Additionally, Count Three of the Second Amended Complaint avers that "[t]he claims set forth in this part of the complaint are requested on the alternative against co-defendant 'The Facilitators' [TFCI], pursuant to local laws CHRISTMAS BONUS ACT (Law 148) and Minimum Salary Act (Law 180)." (Id. at 19). On December 13, 2023, the Court entered default against TFCI. (Docket No. 109).

On July 1, 2024, Plaintiffs filed their *Motion for Summary Judgment*. (Docket No. 114). On July 1, 2024, FEMA and the United States also filed their *Motion for Summary Judgment*; *Defendant's Statement of Uncontested Material Facts in Support of Motion for Summary Judgment* ("FEMA's Uncontested Facts"); and *Memorandum in Support of Summary Judgment*. (Docket Nos. 116; 117; 118). Plaintiffs filed *Plaintiffs' Opposition to FEMA's Motion for*

Civil No. 21-1230 (GMM)
Page – 4 –

*Summary Judgment* on August 20, 2024. (Docket No. 135). On August 26, 2024, the Court ordered Plaintiffs to file a memorandum briefing the interstate commerce element of a FLSA claim, since Plaintiffs did not brief this element either in their Second Amended Complaint, nor in Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment. (Docket No. 136). This despite the fact that Plaintiffs claim FLSA coverage. On August 30, 2024, FEMA filed *Defendant's Response to Plaintiffs' Statement of Uncontested Facts and Statement of Additional Facts* and *Opposition to Plaintiffs' Motion for Summary Judgment*. (Docket Nos. 137, 138). On that same date, Plaintiffs filed their *Motion in Compliance with Court Order*. (Docket No. 139). On September 4, 2024, FEMA filed *Opposition to Plaintiffs' Motion in Compliance with Order Docket Entry 139*. (Docket No. 144).

On September 3, 2024, FEMA filed *Defendants' Motion to Strike Plaintiffs' Opposition to FEMA's Motion for Summary Judgement at Docket Entry No. 135 and deem FEMA's Statement of Uncontested Material Facts as Admitted and Uncontested*. (Docket No. 140). Plaintiffs responded in compliance with Court order on September 10, 2024. (Docket Nos. 142; 145). On the same date, Plaintiffs filed *Reply to FEMA's Motion in Opposition to Plaintiffs' Motion for Summary Judgement*. (Docket No. 146). On September 11, 2024, the Court disregarded *Plaintiffs' Reply to Defendant's Response to Plaintiffs Statement of Uncontested Facts and Statement of*

Civil No. 21-1230 (GMM)
Page - 5 -

*Additional Facts* since they failed to respond to the merits of FEMA's motion at Docket No. 140, as ordered by the Court. (Docket No.150). In addition, the Court determined that Plaintiffs' *Reply to FEMA's Motion in Opposition to Plaintiffs' Motion for Summary Judgement* was filed without prior leave from the Court and in violation of Local Rule 7(c).

## II.   SUMMARY JUDGMENT STANDARD

A.   <u>Fed. R. Civ. P. 56</u>

Motions for summary judgment are governed by Federal Rule of Civil Procedure Rule 56 ("Rule 56"). *See* Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact "if the evidence 'is such that a reasonable jury could resolve the point in favor of the non-moving party.'" <u>Taite v. Bridgewater State University, Board of Trustees</u>, 999 F.3d 86, 93 (1st Cir. 2021) (*quoting* <u>Ellis v. Fidelity Management Trust Company</u>, 883 F.3d 1, 7 (1st Cir. 2018)). A fact is material "if it 'has the potential of affecting the outcome of the case.'" <u>Id.</u> (*quoting* <u>Pérez-Cordero v. Wal-Mart P.R., Inc.</u>, 656 F.3d 19, 25 (1st Cir. 2011)). In reviewing a motion for summary judgment, a court considers "the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. . ." <u>Johnson v. University of Puerto Rico</u>, 714

Civil No. 21-1230 (GMM)
Page - 6 -

F.3d 48, 52 (1st Cir. 2013) (*citing* Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)).

The moving party "bears the initial burden of showing that no genuine issue of material fact exists." Feliciano-Muñoz v. Rebarber-Ocasio, 970 F.3d 52, 62 (1st Cir. 2020) (citation omitted). "Once a properly supported motion has been presented, the burden shifts to the non-moving party to demonstrate that a trier of fact reasonably could find in [its] favor." Rodriguez-Reyes v. Molina-Rodriguez, 21 F. Supp. 3d 143, 144 (D.P.R. 2014) (*citing* Santiago-Ramos v. Centennial P.R. Wireless Corp.*,* 217 F.3d 46, 52 (1st Cir.2000)) (internal citation omitted). "The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). However, the nonmovant "cannot merely 'rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the evidence of an authentic dispute.'" Feliciano-Muñoz, 970 F.3d at 62 (*quoting* McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)); *see also* River Farm Realty Tr. v. Farm Family Cas. Ins. Co., 943 F.3d 27, 41 (1st Cir. 2019) (The nonmovant similarly cannot rely on "conclusory allegations, improbable inferences, and unsupported speculation" to defeat summary judgment.) (citation and quotation marks omitted).

Civil No. 21-1230 (GMM)
Page – 7 –

In ruling on a motion for summary judgment, a Court shall admit facts which are properly supported and not properly controverted. *See* Rodríguez-Severino v. UTC Aerospace Sys., Civil No. 20-1901, 2022 WL 15234457, at *5 (1st Cir. Oct. 27, 2022). However, a Court must simultaneously abstain from "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences. . .[since these are] jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000).

B.   Local Civ. R. 56

In this District, summary judgment is also governed by Local Rule 56. *See* Local Civ. R. 56. "A party moving for summary judgment must submit factual assertions in a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Rosado v. Adorno-Delgado, No. CV 22-01182 (MAJ), 2024 WL 1076673, at *3 (D.P.R. Mar. 12, 2024) (*quoting* Loc. Rule 56(b)) (internal quotations omitted). This rule provides that a non-movant must then "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Local Civ. R. 56(c). "Pursuant to Local Rule 56(e), the parties must submit statements of fact and oppositions thereto, and facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed

Civil No. 21-1230 (GMM)
Page - 8 -

admitted unless properly controverted." <u>Ramirez-Rivera v. DeJoy</u>, No. 3:21-CV-01158-WGY, 2023 WL 6168223, at *1 (D.P.R. Sept. 22, 2023) (*quoting* Local Rule 56(e))(internal quotation marks omitted).

Failure to comply with Local Rule 56(c) allows the Court to accept a party's proposed facts as stated. *See* <u>López-Hernández v. Terumo Puerto Rico LLC</u>, 64 F.4th 22, 26 (1st Cir. 2023); *see also* <u>Natal Pérez v. Oriental Bank & Trust</u>, 291 F.Supp.3d 215, 219 (D.P.R. 2018) ("If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as uncontroverted."). Litigants ignore Local Rule 56(c) at their peril. *See* <u>López-Hernández</u>, 64 F.4th at 26.

### III. UNCONTESTED FACTS

The Court examined *Plaintiffs' Statement of Uncontested Facts in Support of Plaintiffs' Motion for Summary Judgment* ("Plaintiffs' Uncontested Facts") (Docket No. 114-1); FEMA's Uncontested Facts (Docket No. 117); and *Defendant's Response to Plaintiffs' Statement of Uncontested Facts and Statement of Additional Facts* (Docket No. 137). Plaintiffs failed to comply with Local Rule 56(c) by not submitting an opposing statement admitting or controverting FEMA's Uncontested Facts at Docket No. 117. *See* (Docket Nos. 135; 153). As such, the Court finds all

Civil No. 21-1230 (GMM)
Page - 9 -

FEMA's Uncontested Facts (Docket No. 117) to be uncontroverted and admits those that are properly supported.[2]

Moreover, the Court only credited material facts properly supported by a record citation and has not considered documents submitted in the Spanish language. *See* Local Rule 5(c); <u>Puerto Ricans for Puerto Rico Party v. Dalmau</u>, 544 F.3d 58, 67 (1st Cir. 2008); <u>Estades-Negroni v. Assocs. Corp. of N. Am.</u>, 359 F.3d 1, 2 (1st Cir. 2004) (*citing* <u>United States v. Rivera-Rosario</u>, 300 F.3d 1, 6 (1st Cir. 2002)).

Accordingly, the Court makes the following findings of fact:

1.    In September 2017, Hurricanes Irma and María struck the Island of Puerto Rico causing catastrophic damages. Hurricane María affected all the municipalities of Puerto Rico and caused devastating damages to the Island's infrastructure. (Docket Nos. 114-1 at 2 ¶ 1; 137 at 7 ¶ 1).

2.    As a result of Hurricane María, on September 20, 2017, at the request of the Governor of Puerto Rico and pursuant to 42 U.S.C. § 5170, the President of the United States declared a major disaster for the Island. The disaster declaration lasted from September 17, 2017 through November 15, 2017 (FEMA DR-4339- PR). (Docket Nos. 114-1 at 2 ¶ 2; 117 at 2 ¶ 1; 137 at 7 ¶ 2).

---

[2] The Court notes that in *Defendant's Response to Plaintiffs' Statement of Uncontested Facts and Statement of Additional Facts*, FEMA requests that Plaintiffs' exhibits at Dockets Nos. 114-9, 114-10, and 114-11 should be stricken as sham affidavits. (Docket No. 137 at 2-5). "In determining whether the testimony constitutes an attempt to manufacture an issue of fact so as to defeat summary judgment, the court may consider the timing of the affidavit, as well as the party's explanation for the discrepancies." <u>Reyes v. Prof'l HEPA Certificate Corp.</u>, 74 F.Supp.3d 489, 492 (D.P.R. 2015). "Such testimony can be stricken by the court when the party proffering the evidence provides no satisfactory explanation for the changed testimony." <u>Id.</u> (*citing* <u>Torres v. E.I. Dupont De Nemours & Co.</u>, 219 F.3d 13, 20-21 (1st Cir. 2000)). FEMA, however, did not specify the ways in which the cited exhibits contradicted facts previously provided. Thus, the Court declines to strike these exhibits.

Civil No. 21-1230 (GMM)
Page – 10 –

3.    Following Hurricane María, FEMA funds were made
      available to provide eligible disaster assistance
      to applicants in Puerto Rico. (Docket Nos. 114-1 at
      2 ¶ 3; 137 at 7 ¶ 3).

4.    On June 1, 2018, FEMA announced an "Opportunity for
      Funding for Disaster Case Management in Puerto
      Rico." The announcement included an invitation for
      qualified nongovernmental and nonprofit entities
      with disaster case management experience to apply
      for a federal award through FEMA's Disaster Case
      Management Program ("DCMP"). (Docket Nos. 114-1 at
      2 ¶ 5; 114-4 at 1; 117 at 2 ¶ 3; 117-1; 137 at 7 ¶
      5).

5.    The DCMP was created by FEMA, and included
      alternative methods, identified by FEMA, for the
      completion of the most cost efficient and effective
      method for delivering support for disaster case
      management to States or Territories. (Docket Nos.
      114-1 at 2 ¶ 4; 114-3 at 4; 137 at 7 ¶ 4).

6.    The DCMP involves a partnership between a disaster
      case manager and a disaster survivor to develop and
      carry out an individual disaster recovery plan.
      (Docket Nos. 117 at 2-3 ¶ 5; 117-4 ¶ 4; 135).

7.    A disaster recovery plan is a formal, written plan
      developed to accomplish the recovery goals
      identified by the survivor with support from the
      disaster case manager that includes specific goals
      and objectives that link with the survivor's
      disaster caused unmet needs. (Docket Nos. 117 at 2-
      3 ¶ 5; 117-4 ¶ 4; 135).

8.    A disaster caused unmet need is any un-resourced
      item, support, or assistance that has been assessed
      and verified as necessary for a disaster survivor
      to recover from disaster. This may include food,
      clothing, shelter, first aid, emotional and
      spiritual care, household items. . .etc. (Docket
      Nos. 117 at 2-3 ¶ 5; 117-4 ¶ 4; 135).

9.    The DCMP provides disaster survivors with a single
      point of contact to facilitate access to a broad
      range of available disaster assistance resources.

Civil No. 21-1230 (GMM)
Page - 11 -

> The goal of the DCMP is to assist individuals and
> families through the recovery process. (Docket Nos.
> 117 at 3 ¶ 6; 117-4 ¶ 5; 135).

10. Under the DCMP, FEMA, as the Federal awarding
    agency, provides award oversight and technical
    assistance to DCMP award recipients so they may
    provide allowable assistance to survivors for
    disaster-caused unmet needs in compliance with
    Federal regulations and FEMA grant guidelines. FEMA
    does not have operational control over a DCMP award
    recipient or its employees. (Docket Nos. 117 at 3-
    4 ¶¶ 7, 10; 117-4 ¶¶ 14-15; 135).

11. The DCMP Federal award is a cooperative agreement
    (or grant) and not a contract. FEMA was not involved
    in the day-to-day administrative activities of a
    DCMP federal award recipient. (Docket Nos. 117 at
    3 ¶ 8; 117-4 ¶ 25; 135).

12. Pursuant to Amendment Number 12 to the FEMA-
    Commonwealth Agreement for FEMA-DR-4339-PR, an
    agreement between Puerto Rico and FEMA, "[t]he
    State authorized these non-profit organizations
    [including TFCI] to access FEMA's
    survivor/registrant data, in order to assess
    verified disaster-caused unmet needs, monitor the
    progress towards reaching the recovery plan goals;
    and to any other extent necessary to accomplish the
    objectives of the DCM program." (Docket Nos. 114-1
    at 3-4 ¶ 11; 114-8 at 2-3; 137 at 8-9 ¶ 11).

13. TFCI, a nonprofit entity from Oklahoma, submitted
    a DCMP proposal of services for Puerto Rico. TFCI
    then entered into an agreement with FEMA
    ("Cooperative Agreement") to receive federal grant
    award funds for the purpose of providing services
    for unmet needs of disaster victims under the DCMP.
    (Docket Nos. 114-1 at 3-4 ¶¶ 8, 12, 14; 114-6; 117
    at 2 ¶ 4; 117-2; 135; 137 at 8-11 ¶¶ 8, 1, 14).

14. The Cooperative Agreement was to last from July 30,
    2018 through July 29, 2019. Under the Cooperative
    Agreement, FEMA awarded $7,855,680.00 to TFCI.
    (Docket Nos. 114-1 at 3 ¶ 9; 114-5; 117 at 3 ¶ 9;
    117-2; 117-3 at 20; 137 at 7-8 ¶ 9).

Civil No. 21-1230 (GMM)
Page - 12 -

15. The Cooperative Agreement established terms and conditions, including the Department of Homeland Security ("DHS") Standard Terms and Conditions, which applies to all new federal financial assistance awards funded in 2017. (Docket Nos. 114-1 at 3 ¶ 10; 114-5 at 6-10; 114-7; 137 at 8 ¶ 10).

16. FEMA required TFCI to prepare an implementation and outreach plan that included staffing; provide a training schedule and curriculum for review and approval (which could not be changed without FEMA's approval); and a plan to close operations. (Docket Nos. 114-1 at 4 ¶ 13; 114-6; 137 at 10 ¶ 13).

17. In August 2018, TFCI began hiring employees consistent with its approval and initial grant award from FEMA under the Cooperative Agreement. (Docket Nos. 114-1 at 5 ¶¶ 16-17; 137 at 11-12 ¶¶ 16-17).

18. Plaintiffs applied for work with TFCI and interviewed with TFCI officials, Sarah Gordon ("Gordon") and/or Monte "Stick" Keiner ("Keiner"). No FEMA officials were present or involved in TFCI's hiring interviews, qualification review, or candidate selection. (Docket Nos. 117 at 4 ¶ 12; 117-5 at 24-25; 117-6 at 26-27; 117-7 at 26-27; 117-8 at 26-28; 117-9 at 31-32; 117-10 at 24-25; 117-11 at 26-28; 135).

19. Gordon and/or Keiner had the authority to hire and fire TFCI employees like Plaintiffs. FEMA did not have the authority to hire or fire any of the Plaintiffs. (Docket Nos. 117 at 5 ¶ 13; 117-3 at 20; 117-5 at 31; 117-6 at 46; 117-8 at 67; 117-9 at 47; 117-10 at 41; 135).

20. Plaintiffs received employment offer letters from TFCI which contained rates of pay. (Docket Nos. 117 at 5 ¶ 14; 117-6 at 19-20; 117-7 at 21; 117-8 at 26-28; 117-10 at 31-32; 135).

21. TFCI offered every Plaintiff a compensation package which included: (a) wages/salaries, (b) reimbursements for millage; (c) fringe benefits

(including accrued vacation & sick leave; medical plan and a Christmas Bonus); and (d) health insurance. (Docket Nos. 114-1 at 5 ¶ 18; 114-11 at 3; 117 at 5 ¶ 15; 117-7 at 25; 135; 137 at 12 ¶ 18).

22.  TFCI provided training to the Plaintiffs on how to perform their jobs. (Docket Nos. 117 at 5 ¶ 16; 117-5 at 28; 117-6 at 29; 117-7 at 42; 117-9 at 37; 117-10 at 32; 135).

23.  TFCI issued the Plaintiffs identification tags to identify them as TFCI employees while at work. (Docket Nos. 117-9 at 48-49; 117-10 at 41; 117-11 at 47-48; 135).

24.  TFCI provided Plaintiffs with TFCI-issued laptops and cell phones to perform their work. The laptops that Plaintiffs used did not require PIV cards to access them. The laptops used by Plaintiffs for work did not have labels identifying them as US government property. The laptops, cell phones and other equipment were selected and purchased by TFCI at Best Buy and Office Depot. (Docket Nos. 117 at 6-7 ¶ 20; 117-5 at 28; 117-6 at 42-43; 117-7 at 44-46; 117-8 at 55; 117-9 at 48; 117-14 at 34-36; 135).

25.  The Plaintiffs did not sign any employment agreement with FEMA. (Docket Nos. 117 at 7 ¶ 21; 117-5 at 26-27; 117-7 at 29; 117-8 at 31-32; 117-10 at 33; 135).

26.  Plaintiffs were required to go to their TFCI supervisors to request leave or advise if they would be late for work. Plaintiffs did not report to any FEMA officials if they would be late or would miss work. (Docket Nos. 117 at 7 ¶ 22; 117-5 at 29-30; 117-6 at 38-39; 117-7 at 36-37; 117-8 at 61-62; 117-9 at 35-36; 117-10 at 39-40; 117-11 at 55-57; 135).

27.  Plaintiffs were given work assignments by their TFCI supervisors –not FEMA staff. For example, TFCI supervisors would task Plaintiffs to perform community outreach or work in a FEMA Community Resource Center ("CRC"). (Docket Nos. 117 at 8 ¶

Civil No. 21-1230 (GMM)
Page – 14 –

23; 117-5 at 31-32; 117-6 at 40; 117-7 at 36-37;
117-8 at 33-34; 117-9 at 35-36; 117-10 at 36; 117-
11 at 46-47; 135).

28. Plaintiffs were assigned to work at three (3)
different venues: a small group was assigned to
TFCI offices to provide administrative duties and
data entry; a second group (composed primarily of
"construction cost analysts") was on the streets
and performed inspections, evaluated disaster-
caused damages, made assessments and coordinated
help for victims; and the third and largest group
was assigned to the CRC administered by FEMA in San
Juan, Carolina, Bayamon, Guaynabo and Trujillo
Alto. (Docket Nos. 114-1 at 5 ¶ 19; 114-11 at 3;
137 at 12-13 ¶ 19).

29. Some TFCI employees went canvasing various
neighborhoods on their own or under instruction of
their supervisor looking for additional disaster
survivors to assist. (Docket Nos. 117 at 9 ¶ 28;
117-5 at 30; 135).

30. Plaintiffs who worked as Data Entry Specialists
received physical documents from TFCI case managers
regarding disaster applicants and entered and
organized the information into TFCI laptops via
Excel program. The electronic information entered
by Plaintiffs was stored locally by TFCI and not
FEMA. TFCI did not use any cloud-based or FEMA
systems to store electronic records. TFCI staff
organized and stored physical documents collected
from disaster applicants in TFCI office space.
(Docket Nos. 117 at 6 ¶ 19; 117-12 at 32, 33-34;
135).

31. Some Plaintiffs worked out of FEMA CRC, which were
shared spaces with governmental entities (e.g.,
U.S. Small Business Administration ("SBA"), Puerto
Rico Mental Health and Anti-Addiction Services
Administration ("ASSMCA"), and Tu Hogar Renace) and
non-governmental organizations (e.g., Red Cross)
who all provided assistance to disaster victims.
(Docket Nos. 117 at 8 ¶ 24; 117-5 at 10-11; 117-7
at 35; 117-8 at 37-38; 117-9 at 39-40; 135).

Civil No. 21-1230 (GMM)
Page – 15 –

32.  FEMA provided rules of behavior for all individuals
     working out of a CRC. All individuals entering the
     CRC had to sign in and out regardless of whether
     they were disaster survivors or employees of
     governmental entities or non-governmental
     organizations. (Docket Nos. 117 at 9 ¶ 26; 117-5 at
     32-33; 117-6 at 36-39; 135).

33.  FEMA referred disaster survivors to TFCI for
     assistance if they were not eligible for FEMA
     disaster assistance and/or had unmet needs that
     were outside the scope of what FEMA could provide.
     (Docket Nos. 117 at 9 ¶ 27; 117-7 at 35; 117-14 at
     28-30; 135).

34.  TFCI employees were aware that they would assist
     those disaster survivors that did not qualify for
     FEMA assistance or had exhausted the assistance
     FEMA could provide but still had disaster-caused
     unmet needs. (Docket Nos. 117 at 4 ¶ 11; 117-14 at
     29-31; 117-7 at 34).

35.  TFCI employees kept track of their hours worked on
     TFCI timesheets which were submitted to Gordon.
     Gordon handled payroll for the Plaintiffs which was
     paid out by direct deposit. (Docket Nos. 117 at 9
     ¶ 29; 117-5 at 31; 117-6 at 34; 117-8 at 62-63;
     135).

36.  TFCI was the payor on the Plaintiffs' direct
     deposit payments. If there were any problems with
     an individual Plaintiff's pay, that Plaintiff would
     consult Gordon. (Docket Nos. 117 at 9 ¶ 30; 117-5
     at 31; 117-9 at 44; 117-11 at 40-41; 135).

37.  Gordon told Plaintiffs that FEMA paid their
     salaries after she submitted payroll documentation
     to FEMA. (Docket Nos. 117 at 10 ¶ 31; 117-6 at 44;
     117-10 at 49-50; 135).

38.  Plaintiffs' W-2 tax forms for 2018 identified TFCI
     as their employer, not FEMA. (Docket Nos. 117 at 10
     ¶ 32; 117-5 at 31-32; 117-5 at 23; 117-7 at 47;
     117-10 at 43; 135).

Civil No. 21-1230 (GMM)
Page - 16 -

39. TFCI maintained Plaintiffs' employment records within its system of records in its own office space. FEMA did not maintain any of Plaintiffs' records. (Docket Nos. 117 at 10 ¶ 34; 117-13 at 54-55; 117-14 at 50-51; 135).

40. On April 30, 2019, Gordon sent an e-mail to FEMA officers Sharon James and Theresa Gregory with the subject line "March 2019 SF425 and Related Reports." In this e-mail, Gordon stated that:

> relevant FEMA leadership are being copied as well as aides from Senator James Lankford of Oklahoma who is part of the Congressional Appropriations Sub-committee for Department of Homeland Security. These additional individuals are being copied due to Request for Congressional Inquiry related to withholding of Congressionally-approved award that will directly result in financial and legal non-compliance.
>
> (Docket Nos. 114-1 at 6 ¶ 24; 114-13; 137 at 15 ¶ 24).

41. On May 14, 2019, Gordon sent an email to Sharon James, Peter McGrath, Dale McShine, and Theresa Gregory with the subject line "Re: DCMP: Important Notification Regarding Grant Status." In this email, Gordon stated that: "We are requesting release of funds via Payment Management System today to cover payroll and fringe amounts so that they can be paid as indicated in the attached Excel spreadsheet." (Docket Nos. 114-1 at 6 ¶ 26; 114-15 at 1; 137 at 16 ¶ 26).

42. On May 29, 2019, Gordon sent Plaintiffs a letter on behalf of TFCI which stated:

> as a result of changes imposed after the federal government past shutdown, we have encountered various setbacks in order to receive in a timely manner the funds granted by FEMA under the approved [Cooperative] Agreement with FEMA. . .For that reason we are notifying the ENTIRE

Civil No. 21-1230 (GMM)
Page – 17 –

> WORK TEAM that we are faced with a delay
> generating payroll payments. As a result.
> . .[TFCI] will not be able to generate
> the payroll of the team for next Friday
> May 31, 2019.
>
> (Docket Nos. 114-1 at 7 ¶ 29; 114-16; 137
> at 17 ¶ 29).

43.  Payment delay notifications were sent each week to
     Plaintiffs by TFCI. (Docket Nos. 114-1 at 7 ¶ 31;
     114-17 at 2; 114-18 at 2; 114-19 at 2; 137 at 18 ¶
     31).

44.  Between July 18 and July 23, 2019, TFCI via Gordon
     and FEMA via Sharon James exchanged numerous e-
     mails regarding whether TFCI had submitted
     sufficient and proper documentation of proof of
     payment for each staff person's payroll and fringe
     benefits to be entitled to the release of FEMA award
     funds. (Docket Nos. 114-1 at 7-8 ¶ 32; 114-20; 137
     at 18-19 ¶ 32).

45.  On June 5, 2019, Gordon sent an e-mail to FEMA
     officials with the subject line "Fw: Payroll and
     Fringe Funding Request May 23, 2019 (PR DCMP)." In
     this email, Gordon stated:

> On the phone call on Monday, June 3rd, you
> said that the original intent of advances was
> to provide working capital and then switch to
> reimbursement basis rather than advance basis.
> We were verbally advised by George Hogan that
> there would not be a limit to advances that we
> could request and they could be requested on
> a quarterly or monthly basis at our
> discretion. Further, we have not been allowed
> to maintain a working capital balance if that
> is the new intent.
>
> (Docket Nos. 114-1 at 8 ¶ 33; 114-23 at 2; 137
> at 19 ¶ 33).

46.  On June 24, 2019, Gordon sent an e-mail to FEMA
     officials with the subject line "EXTREMELY URGENT:
     Puerto Rico Disaster Came Mgmt SF 270 Request #5
     $597,489.48." In this e-mail, Gordon stated:

Civil No. 21-1230 (GMM)
Page - 18 -

> Please process this request for
> $597,489.48 promptly as we have 6 weeks
> of payroll and fringe that are past due
> along with other urgent costs associated
> with the Puerto Rico Disaster Case
> Management Program. We feel we have
> complied with requests, substantiated
> costs with documentation support and need
> these amounts funded right away.

(Docket Nos. 114-1 at 8 ¶ 34; 114-21 at 1; 137 at
19-20 ¶ 34).

47. On June 27, 2019, TFCI Director (Sarah Gordon) sent
an e-mail to Theresa Gregory and other FEMA
officials with the subject line "DEMAND FOR
IMMEDIATE PAYMENT TO AVOID FULL PROGRAM SHUTDOWN."
In this e-mail, Gordon stated:

> This email is a demand for payment by
> Friday, June 28, 2019 to avoid program
> shutdown. A request for SF 270 Request #5
> has been keyed into the Payment
> Management System and must be released
> today to avoid full non-compliance by
> FEMA which will result in a complete
> shutdown without proper demobilization
> of our Puerto Rico Disaster Case
> Management Program due to continued
> withholding of federal funds. We
> requested an extension of time with
> additional funds, but we still need to
> receive funds timely to continue working
> on the scale required by this program.
> Approximately 48% of our almost 2000
> families are in barrios and sectors that
> are regarded as dangerous and commonly
> referred to as hot zones and we are
> concerned about what will happen with
> those survivors of Hurricane Maria, who
> are typically elderly and/or with
> functional needs. This will also leave
> almost 80 Puerto Ricans without
> compensation and fringe for now 7 weeks
> of work in the program.

Civil No. 21-1230 (GMM)
Page – 19 –

(Docket Nos. 114-1 at 8 ¶ 35; 114-22 AT 1-2; 137 at 20 ¶ 35).

48.  On June 28, 2019, Gordon sent an e-mail to Theresa Gregory and other FEMA officials with the subject line "Re: DEMAND FOR IMMEDIATE PAYMENT TO AVOID FULL PROGRAM SHUTDOWN." In this e-mail, Gordon stated:

> Since our request for payment was denied today, we cannot guarantee that our program will be operational by the time this visit happens as employees have worked 7 weeks that they now need to be paid for, fringe needs paid, rent needs paid and unemployment needs paid. We are losing key employees and not sure that those who have worked the last 7 weeks without pay will be able to continue to do so. We are open to an in person monitor of disbursement of payment for payroll, fringe, unemployment, rent and other critical expenditures, despite having submitted adequate documentation for that. The situation is extremely dire and not necessarily in our control as our employees are stopping their work. Please consider arranging right away for someone to come work with us to disburse funds.

> (Docket Nos. 114-1 at 8-9 ¶ 36; 114-22 at 1; 137 at 20 ¶ 36).

49.  Plaintiffs received a late partial payment from TFCI in July 2019 covering the month of May 2019 pay period. (Docket Nos. 114-1 at 9 ¶ 38; 137 at 21 ¶ 38).

50.  On July 25, 2019, FEMA sent TFCI an e-mail with the subject line "DR 4339PR Disaster Case Management Program Award No.: 4339DRPRCIIIDCM Period of Performance Extension Denial." The letter stated:

On May 5, 2019, The Facilitators: Camp Ironhorse, Inc. (Recipient) requested a 12-month extension of the period of performance (POP) for the Disaster Case Management (DCM) program award. The Federal

Civil No. 21-1230 (GMM)
Page – 20 –

Emergency Management Agency (FEMA) has reviewed the POP extension request and it has been denied for the following reasons:

- The regulations within the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards found in 2 C.F.R. § 200 are applicable to all DCM Federal awards. To date, the Recipient has not demonstrated that it has the capacity to manage the DCM federal award appropriately, and in compliance with those federal guidelines and regulations.

- As the Federal awarding agency, FEMA provides quality assurance and monitors the Recipient entity in meeting Federal award requirements, use of the Federal award funding, and meeting the audit requirements of the program. However, the Recipient's leadership has resisted efforts by FEMA to provide technical assistance regarding case management processes, program documentation and collaboration with relevant stakeholders.

- The Recipient has not demonstrated enough capacity to reach the target caseload within the established timeframe and has not documented favorable outcomes consistent with the scale of their operation.

- The Recipient is responsible for the accounting and expenditures, cash management and maintenance of financial records. However, there is a significant number of questioned expenditures and outstanding issues regarding allowable use of funds that are currently under review. Also note

Civil No. 21-1230 (GMM)
Page – 21 –

> that FEMA cannot consider a POP
> extension request if all financial
> reports are not current and
> complete.

- Finally, although DCM is a cost
  reimbursable program, the Recipient
  has no operating capital to support
  operational costs, outside of the
  DCM grant funds.

(Docket Nos. 114-1 at 9 ¶ 39; 114-24 at 1; 137 at 21-22 ¶ 39).

51. On August 2, 2019, TFCI sent a letter of termination
    to all remaining employees stating that August 3,
    2019 would be their official termination date.
    (Docket Nos. 114-1 at 10 ¶ 42; 137 at 23 ¶ 42).

52. TFCI continued to make payment requests to FEMA to
    cover payroll. (Docket Nos. 114-1 at 10 ¶ 43; 114-
    26; 137 at 23¶ 43).

## IV.  DISCUSSION

A.  <u>FLSA Claim against FEMA</u>

Plaintiffs seek unpaid wages and penalties under the FLSA.
They contend that "[p]ursuant to the [Cooperative] Agreement, TFCI
acted directly or indirectly in the interest of FEMA in relation
to its employees, thus codefendants/employers are not completely
dissociated with respect to the employment of TFCI employees, and
may be deemed to share control of the employees" making both FEMA
and TFCI employers that may be held liable under the FLSA. (Docket
No. 114-2 at 5). Plaintiffs further allege that through the
Cooperative Agreement FEMA provided funds from which Plaintiffs'
salaries were paid and mandated that TFCI prepare an outreach plan,

Civil No. 21-1230 (GMM)
Page - 22 -

training schedule, and curriculum that governed Plaintiffs'
employment. (Id. at 11-12). Moreover, Plaintiffs emphasize that
their initial hiring and eventual firing were instigated by the
initiation of TFCI's contract with FEMA and the later conclusion
of that contract. (Id. at 13).

Conversely, FEMA avers that it was not Plaintiffs' joint
employer, emphasizing that "the only relationship that exists
between FEMA and TFCI is that TFCI applied for, qualified for, and
received a Federal award for Disaster Case Management Program
("DCMP") for Hurricane María." (Docket No. 118 at 2). Moreover,
FEMA explains that while there was an employer-employee
relationship between Plaintiffs and TFCI, "FEMA, as the agency
awarding the grant funds, [only] provides award oversight and
technical assistance to the DMC[P] award recipient so they may
implement and provide DCM[P] services. FEMA, however, does not
have operational control over the DCM[P] recipients of their
employees, nor is the DCM[P] recipient or any of its employees
acting on behalf of FEMA." (Id. at 3-4).

The purpose of the FLSA, 29 U.S.C. §§ 201 et seq., is to
"protect all covered workers from substandard wages and oppressive
working hours." Scalia v. Evolution Quality Guard, Inc., No. CV
17-1210 (RAM), 2020 WL 1492782, at *6 (D.P.R. Mar. 27, 2020)
(quoting Encino Motorcars, LLC v. Navarro, 136 S. Ct. 2117, 2121
(2016) and Barrentine v. Arkansas-Best Freight System, Inc., 450

Civil No. 21-1230 (GMM)
Page - 23 -

U.S. 728, 739, (1981)). To achieve this aim, the FLSA establishes "federal minimum-wage, maximum-hour, and overtime guarantees." Giguere v. Port Res. Inc., 927 F.3d 43, 45 (1st Cir. 2019).

"The basic elements of a FLSA claim are that (1) plaintiffs must be employed by the defendants; (2) the work involved interstate activity; and. . .(3) plaintiffs performed work for which they were under-compensated." Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013) (quoting Pruell v. Caritas Christi, 678 F.3d 10, 12 (1st Cir. 2012)) (internal quotation marks omitted). As such, FEMA is only liable for FLSA violations if they are determined to be Plaintiffs' "employer." See Donovan v. Agnew, 712 F.2d 1509, 1510 (1st Cir. 1983).

FLSA regulations provide that:

> if the facts establish that the employee is employed jointly by two or more employers. . . all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act. . .

29 C.F.R. § 791.2(a). A joint employer relationship may exist "[w]here the employee performs work which simultaneously benefits two or more employers" in a situation such as one "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the

Civil No. 21-1230 (GMM)
Page - 24 -

fact that one employer controls, is controlled by, or is under common control with the other employer." Id. § 791.2(a).

To determine whether FEMA can be classified as a joint employer under the FLSA, the First Circuit utilizes a four-factor "economic reality" test. See Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir. 1998). Applying this test, courts consider: "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Id. (internal citations omitted). "The Baystate court explained that the first two factors 'address the extent of a putative employer's control over the nature and structure of the working relationship,'. . .and the second two 'address the extent of a putative employer's control over the economic aspects of the working relationship.'" Hamilton v. Partners Healthcare Sys., Inc., 209 F.Supp.3d 379, 390-91 (D. Mass. 2016), aff'd, 879 F.3d 407 (1st Cir. 2018) (quoting Baystate, 163 F.3d at 675-676). In Baystate, the First Circuit stressed that "[i]t is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer." Baystate, 163 F.3d at 676.

In the instant case, the core issue in dispute between Plaintiffs and FEMA is whether FEMA qualifies as Plaintiffs'

Civil No. 21-1230 (GMM)
Page – 25 –

employer under the FLSA. Thus, the Court considers the <u>Baystate</u>
economic reality test factors and reviews them in light of the
totality of the circumstances surrounding FEMA and TFCI's
relationship.

### 1.    The power to hire and fire Plaintiffs

Plaintiffs appear to concede that this factor does not support
its joint employer liability argument. (Docket No. 114-2 at 14).
Nevertheless, the Court finds that it is undisputed that Plaintiffs
were hired and fired by TFCI, and FEMA was not involved in
recruiting, interviewing, or terminating Plaintiffs. The
uncontested facts provide that TFCI sent Plaintiffs both their
employment offers and letters of termination. Notably, Plaintiffs
do not controvert the facts that: (1) "[n]o FEMA officials were
present or involved in TFCI's hiring interviews, qualification
review, and or candidate selection" and (2) "FEMA did not have the
authority to hire or fire any of the Plaintiffs." *See* Docket Nos.
117 at 4 ¶¶ 12-14; 135. Thus, this <u>Baystate</u> factor weighs in favor
of finding no joint employer liability under the FLSA.

### 2.    Control of Plaintiffs' work schedules, conditions of employment, and assignment of work

Plaintiffs contend that FEMA's DCMP funding of TFCI's work
was conditioned upon certain requirements including paying
employee salaries via a FEMA reimbursement method and defining the

Civil No. 21-1230 (GMM)
Page – 26 –

type of work that TFCI and its employees were allowed to perform using FEMA funding. (Docket No. 114-2 at 11-13). FEMA, on the other hand, notes that it was TFCI, not FEMA, who trained, gave work assignments, and provided identification cards and work technology to Plaintiffs. (Docket No. 118 at 8-9).

The Court finds Plaintiffs' argument on this point to be unpersuasive. Conditions of a non-governmental organization ("NGO") being awarded government funding notably differ from the supervision and control described in the Baystate economic reality test. The Baystate court listed various ways in which alleged plaintiff employees were supervised and controlled. There, the alleged employer

> dictated the times at which workers were to report. . .; screened workers for minimum qualifications; decided which workers would be assigned to particular job sites; sometimes transported workers to job sites at client companies; instructed workers about appropriate dress and work habits; and forbade workers from contacting directly a client company about potential job opportunities.

Baystate, 163 F.3d at 676. These examples of supervision are instances of day-to-day control, and the uncontested facts don't support that FEMA exercised any such control. Notably, Plaintiffs do not contest that: (1) "Plaintiffs were given work assignments by their TFCI supervisors – not FEMA Staff"; and (2) it was TFCI and not FEMA to which Plaintiffs were required to report should they need to adjust their work schedules. (Docket Nos. 117 at 7-8

Civil No. 21-1230 (GMM)
Page – 27 –

¶¶ 22-23; 135). The record shows that FEMA's role was that of the awarding agency that provided the federal funds to TFCI. FEMA's actions only reflect those of an agency ensuring compliance with applicable regulations relating to federal funds, and not that of an employer. Thus, the Court concludes that this factor too weighs against a finding of joint employment.

### 3.    Determination of Rate and Method of Payment

Plaintiffs aver that their "salaries depended on FEMA funds" "pursuant to the Cooperative Agreement" between TFCI and FEMA. (Docket No. 114-2 at 12). Conversely, FEMA argues that TFCI, not FEMA, set Plaintiffs' rates of pay, received Plaintiffs' time sheets, and issued Plaintiffs paychecks via direct deposit. (Docket No. 118 at 10-11).

"This factor [of the Baystate economic reality test] 'address[es] the extent of a putative employer's control over the economic aspects of the working relationship.'" Bah v. Enter. Rent-A-Car Co. of Bos., LLC, Civil No. 17-12542-MLW, 2020 WL 6701324, at *8 (D. Mass. Nov. 13, 2020) (quoting Baystate, 163 F.3d at 676)). It is undisputed that FEMA provided TFCI with conditional grant funding that was used to support TFCI's DCMP staffing. However, the mere fact that FEMA was the originating source for some of the money used to pay Plaintiffs' wages does not alone sway this factor in favor of finding joint employer status.

Civil No. 21-1230 (GMM)
Page – 28 –

In <u>Baystate</u>, the Court emphasized that the putative employer set worker's wages, selected the payment methodology, received time sheets, and oversaw payroll. <u>Baystate</u>, 163 F.3d at 676. Similarly, here, it was TFCI and not FEMA, that collected Plaintiffs' timesheets, oversaw Plaintiffs' payroll, and paid Plaintiffs' salaries via direct deposit. The uncontested facts do not demonstrate that FEMA exerted significant control over the rate and method of compensating Plaintiffs for their work. Again, FEMA was just the awarding agency. In fact, the Parties agree that Plaintiffs "kept track of their hours worked on TFCI timesheets which were submitted to [a] TFCI official. . .[who] handled payroll for the Plaintiffs which was paid out by direct deposit. . .[and] [i]f there were any problems with an individual Plaintiff's pay, Plaintiffs would need to consult" a TFCI official. *See* Docket Nos. 117 at 9 ¶¶ 29-30; 135. Moreover, it was TFCI who handled all of Plaintiffs payroll deductions, filings of the W-2 Forms before the Puerto Rico Treasury Department and notice of said W-2 Forms to Plaintiffs. Most notably, the W-2 Form and the Plaintiffs tax returns listed TFCI, not FEMA, as the Plaintiffs' employer. *See* (Docket Nos. 117 at 10 ¶ 32; 117-5 at 31-32; 117-5 at 23; 117-7 at 47; 117-10 at 43; 135). As such, the Court finds that this factor also supports a conclusion that FEMA was not Plaintiffs' joint employer.

Civil No. 21-1230 (GMM)
Page – 29 –

          4.   <u>Maintenance of Employment Records</u>

    Plaintiffs allege that FEMA maintained their employment records since "TFCI provide[d] FEMA with employment records to justify expenditures under the[ir] agreement, that were kept and scrutinized [by FEMA]." (Docket No. 114-2 at 13). Conversely, FEMA states that "TFCI [not FEMA] maintained the custody and control of all employment records and payroll records of the Plaintiffs within its system of records." (Docket No. 118 at 11).

    Here, Plaintiffs appear to conflate purported access and review of employment records to the maintenance of those same records. Notably, the First Circuit in <u>Baystate</u> described the following tasks as pertaining to the maintenance of employment records: "handl[ing] all the burdensome paperwork, bookkeeping, record keeping, payroll costs, and government reporting." <u>Baystate</u>, 163 F.3d at 676. Here, the uncontested facts do not indicate that FEMA participated in any similar activities. Rather, Parties agree that "TFCI maintained employment records of the Plaintiffs within its system of records in its own office space. FEMA did not maintain any records on the Plaintiffs." (Docket Nos. 117 at 10 ¶ 34; 135). Thus, the Court finds that this <u>Baystate</u> factor also does not support a finding that FEMA was Plaintiffs' joint employer.

    Ultimately, although the economic reality factors are not dispositive as to a finding of joint employer status, considering

Civil No. 21-1230 (GMM)
Page – 30 –

the totality of the circumstances, the Court finds no question of
material fact regarding whether FEMA was Plaintiffs' employer
under the FLSA. Plainly, the Parties agree that TFCI and its
employees (Plaintiffs) were not working in the service of FEMA,
but rather were aiding survivors of Hurricane María who were
ineligible for FEMA aid. *See, e.g.,* (Docket Nos. 117 at 9 ¶ 27;
117-7 at 35; 117-14 at 28-30; 135). Moreover, the relationship
between TFCI and FEMA was not one of joint employer but rather was
an instance in which a government agency provided grant funding to
a non-profit organization that was conditioned upon certain
spending restrictions. Financial aid and employment control are
not one in the same. As such the Court **GRANTS** FEMA's Motion for
Summary Judgment and **DENIES** Plaintiffs' Motion for Summary
Judgment as it pertains to their FLSA claims against FEMA.


B.   FLSA Claim against TFCI

As noted in the procedural history, Plaintiffs alleged in
their Amended Complaint that "[t]he claims set forth in this part
of the complaint are requested **on the alternative** against co-
defendant "The Facilitators" [TFCI], pursuant to local laws
CHRISTMAS BONUS ACT (Law 148) and Minimum Salary Act (Law 180)."
(Docket No. 77 at 19) (emphasis added). However, Plaintiffs bring
forward FLSA claims against both FEMA and TFCI under the joint
employer standard. Yet, as discussed, the Court has concluded that

Civil No. 21-1230 (GMM)
Page – 31 –

no such relationship exists here between TFCI and FEMA. Accordingly, since Plaintiffs allege in both their Amended Complaint and their *Motion for Summary Judgment* that TFCI is an employer under FLSA and that they are employees covered by the statute, then the Court must consider if Plaintiff's claim against TFCI is covered by FLSA.

It is uncontested that Plaintiffs were employed by TFCI and that they performed the work for which they allege they were undercompensated. Nonetheless, as is critical here, "[o]ne of the 'basic elements' necessary to showing an entitlement to relief under the FLSA is that 'the work involved interstate activity.'" Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015) (*quoting* Manning, 725 F.3d at 43). Failure to satisfy this element means that the FLSA is inapplicable to Plaintiffs' claims. *See* Brown v. J&W Grading, Inc., 390 F.Supp.3d 337, 348 (D.P.R. 2019) (*quoting* Martinez, 792 F.3d at 175)("The FLSA only applies to employment relationships with a 'sufficient nexus to interstate commerce.'").

Again, the FLSA's minimum wage protections only cover "employees engaged in commerce" ("individual coverage") or individuals "employed in an enterprise engaged in commerce or the production of goods for commerce" ("enterprise coverage"). *See* 29 U.S.C. § 206(a) ("[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise

Civil No. 21-1230 (GMM)
Page – 32 –

engaged in commerce or in the production of goods. . .") (emphasis added); *see also* Tony & Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 295 (1985)(for an alleged employer's "commercial activities to be subject to the Fair Labor Standards Act. . .[the alleged employer's] businesses must constitute an "[enterprise] engaged in commerce or in the production of goods for commerce")(*quoting* 29 U. S. C. § 203(s)); Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 914 (9th Cir. 2003). "Commerce, for FLSA purposes, is defined as 'trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.'" Acosta v. Special Police Force Corp., 295 F.Supp.3d 47, 59 (D.P.R. 2018) (*quoting* 29 U.S.C. § 203(b)) (emphasis added).

Here, Plaintiffs contend that the FLSA applies to their claims under a theory of enterprise coverage. *See* (Docket No. 139). "[T]he existence of FLSA enterprise coverage is a two-step determination, and [a plaintiff] must ultimately prove both steps." Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Offs., 955 F.Supp.2d 50, 55 (D.D.C. 2013) (*quoting* Jacobs v. New York Foundling Hosp., 577 F.3d 93, 99, n. 7 (2d Cir.2009)). A plaintiff must demonstrate that (1) the alleged employer is an enterprise under 29 U.S.C. § 203(r)(1); and (2) the enterprise was one that was "engaged in commerce or in the production of goods for commerce" pursuant to

Civil No. 21-1230 (GMM)
Page – 33 –

§ 203(s). (Id.). The Court will address each of these requirements in turn.

        1.   Enterprise Coverage

        a.   Is TFCI an Enterprise?

Pursuant to the FLSA, enterprise is defined as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose. . ." 29 U.S.C. § 203(r)(1) (emphasis added). "Generally, non-profit organizations that do not engage in ordinary commercial activities, or serve the general public in competition with ordinary commercial enterprises, operate without a business purpose and therefore are not enterprises under the FLSA." Malloy, 955 F.Supp.2d at 55 (quoting Jacobs, 577 F.3d at 97) (internal quotations omitted). However, "where such [non-profit] organizations engage in ordinary commercial activities, such as operating a printing and publishing plant, the business activities will be treated under the Act the same as when they are performed by the ordinary business enterprise.'" Tony & Susan Alamo Found., 471 U.S. at 497 (internal citations omitted). To determine if a non-profit organization engaged in "ordinary business activities" or operated with a "business purpose" courts consider "whether the non-profit is primarily engaging in competition in the public with commercial enterprises." Reagor v. Okmulgee Cnty. Family Res.

Civil No. 21-1230 (GMM)
Page – 34 –

*Ctr.,* 501 Fed.Appx. 805, 809 (10th Cir.2012); <u>Katz v. DNC Servs.</u>
<u>Corp.,</u> Civil No. 16-5800, 2018 WL 692164, at *5 (E.D. Pa. Feb. 2,
2018).

It is undisputed that TFCI is a non-profit entity; and
Plaintiffs themselves contend that TFCI "did not obtain a profit
or gain for the Cooperative Agreement. . ." *See* Docket Nos. 114-1
at 4 ¶ 14; 117 at 2 ¶ 4; 117-2; 135; 137 at 10-11 ¶ 14. Moreover,
none of Plaintiffs' filings indicate that commercial competition
was TFCI's primary or even secondary objective.  On the contrary,
the record reflects, and it is undisputed, that TFCI was simply
the recipient of federal grant award funds for the purpose of
providing services for unmet needs of disaster victims under the
DCMP. Specifically, pursuant to Amendment Number 12 to the FEMA-
Commonwealth Agreement for FEMA-DR-4339-PR, an agreement between
Puerto Rico and FEMA, "[t]he State authorized these non-profit
organizations [including TFCI] to access FEMA's
survivor/registrant data, in order to assess verified disaster-
caused unmet needs, monitor the progress towards reaching the
recovery plan goals; and to any other extent necessary to
accomplish the objectives of the DCM program." *See* (Docket Nos.
114-1 at 3-4 ¶ 11; 114-8 at 2-3; 137 at 8-9 ¶ 11).

Although Plaintiffs alleged that as employees they were hired
to "assist with hurricane relief in Puerto Rico by employers or
enterprises," those conclusory statements, not grounded in

Civil No. 21-1230 (GMM)
Page – 35 –

specific facts, are not sufficient to avoid summary judgment. Caselaw reflects that examples of activities that may result in individual employee coverage include making/receiving interstate telephone calls, shipping materials to another state, and transporting persons or property to another state. The record reflects that this was not the case for any of the Plaintiffs nor were any of those activities alleged by Plaintiffs part of their duties and responsibilities. Instead, the record shows that Plaintiffs performed local community outreach or work in a FEMA CRC, all located within Puerto Rico. *See* (Docket Nos. Docket Nos. 114-1 at 5 ¶ 19; 114-11 at 3; 137 at 12-13 ¶ 19; 117 at 8 ¶ 23; 117-5 at 31-32; 117-6 at 40; 117-7 at 36-37; 117-8 at 33-34; 117-9 at 35-36; 117-10 at 36; 117-11 at 46-47; 135). Even under the intentionally broad reach of the FLSA, Rule 56 "demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." Hadley v. County of Du Page, 715 F.2d 1238, 1243 (7th Cir. 1983).

The Court also finds that Plaintiffs' have failed to raise any nonconclusory allegation, or facts, that would allow a reasonable jury to infer that TFCI provided the general public with goods and or services for which it competes with other commercial enterprises to the extent that it could be found to

Civil No. 21-1230 (GMM)
Page – 36 –

have "enter[ed] the economic arena and traffick[ed] in the marketplace" and accordingly "subjected itself to the standards Congress has prescribed for the benefit of employees." Tony & Susan Alamo Found., 471 U.S. at 294. Thus, the Court finds that Plaintiffs failed to adequately allege that they have a valid FLSA cause of action against TFCI.

> b. Does TFCI engage in Commerce?

Even assuming *arguendo*, that Plaintiffs established that TFCI was an enterprise under the FLSA, their claims would nevertheless fail since they did not demonstrate that TFCI was "engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 203(s)(1); 206(a). Section 203(s)(1) provides that an enterprise is "engaged in commerce or in the production of goods for commerce" if it:

> (i) "has employees engaged in commerce or in the production of goods for commerce" *or* "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and
>
> (ii) has a "annual gross volume of sales made or business done [that] is not less than $500,000."

29 U.S.C. §§ 203(s)(1)(A)(i)-(ii).

Here, Plaintiffs allege that "FEMA's cooperative agreement with TFCI clearly exceeded the half-million dollar volume of business required by FLSA (is in the amount of $7,885,680), within

Civil No. 21-1230 (GMM)
Page – 37 –

the period of performance. . .[and] all plaintiffs (employees) would handle, sell, or work on goods or materials that had been moved in or produced for commerce as part of their responsibility to provide allowable assistance to survivors for disaster-caused unmet needs." (Docket No. 139 at 5-6). Plaintiffs' allegations do not indicate what goods or materials they moved in their provision of disaster recovery assistance. Rather, Plaintiffs just restate the standard in 29 U.S.C. § 203(s)(1)(A)(i). A review of Plaintiff's Amended Complaint and *Motion for Summary Judgment* shows conclusory allegations that TFCI was a covered employer and that they were covered employee under the FLSA. As the First Circuit has explained in <u>Manning</u>, when we read a complaint, "conclusory allegations that merely parrot the relevant legal standard are disregarded." <u>Manning</u>, 725 F.3d at 43. Plaintiffs' bare allegations are insufficient to support their FLSA cause of action against TFCI under enterprise coverage.

## 2. Individual Coverage

Although Plaintiffs argue mostly as to enterprise coverage, the Court reviews whether their FLSA claims could fall under individual coverage. As described above, the statute and caselaw provide how to establish enterprise coverage. Yet, "[h]ow one shows that coverage is triggered by the activities of the individual employee (so-called "individual coverage") is less clear." <u>Martinez</u>, 792 F.3d at 175. "Neither the statute nor our circuit

Civil No. 21-1230 (GMM)
Page - 38 -

precedent offers any road map." Id. Other circuits have held that
the employee must "directly participate" in the movement of persons
or things in interstate commerce, but this can be satisfied through
regular use of an instrument of interstate commerce, such as by
using a telephone to call other states for business purposes. *See,*
Id. (*citing* Reagor v. Okmulgee Cnty. Family Res. Ctr.*,* 501
Fed.Appx. 805, 809 (10th Cir.2012)) (internal quotation marks and
alterations omitted). In any event, it is clear that the facts
capable of establishing individual coverage are different from
those supporting a theory of enterprise coverage. "To establish
individual coverage, the employee must present facts showing his
own activities. To establish enterprise coverage, the employee
instead must present facts showing the activities of other
employees, and the employer's sales." Id.

Plaintiffs simply alleged that "all plaintiffs (employees)
would handle, sell, or work on goods or materials that had been
moved in or produced for commerce as part of their responsibility
to provide allowable assistance to survivors for disaster-caused
unmet needs." The record shows that Plaintiffs did not plead facts
about their own activities that would support a conclusion that
the services they performed for TFCI were in the interstate
commerce. Plaintiffs merely anchor their FLSA claim on the
relationship that TFCI had with FEMA and the fact that they
received federal funds from the federal agency. In this regard,

Civil No. 21-1230 (GMM)
Page – 39 –

courts have held that an employer's receipt of federal funding is not determinative as to whether an employee engaged in the interstate commerce necessary for individual coverage. Kitchings v. Fla. United Methodist Children's Home, Inc., 393 F.Supp.2d 1282, 1292 (M.D. Fla. May 18, 2005) (finding that plaintiffs are not engaged in commerce to qualify for individual coverage under FLSA despite plaintiffs' statements that they handled federal money received through the state of Florida; the Court found that plaintiffs, employees for non-profit employer, were not engaged in commerce and granted summary judgment for defendant); see also Vazquez v. Insight Behavioral Health Specialists, LLC, No. 616CV1827ORL22GJK, 2017 WL 2899935, at *4 (M.D. Fla. Apr. 20, 2017); Lehman v. Teamsters Retiree Hous. of Janesville, Wisconsin, Inc., No. 09-CV-288-SLC, 2010 WL 1729880, at *4 (W.D. Wis. Apr. 27, 2010) ("[A]n individual is covered if he or she engages in activities of interstate commerce, regardless whether the employer receives federal funding.").

Plaintiffs' allegations simply track the language of the FLSA and repeat the legal standard for determining whether an employer is a covered entity. Plaintiffs, who have the burden of proof on establishing that they are engaged in interstate commerce, have not pointed to evidence in the record that would raise a dispute of material fact on this essential element of Plaintiffs' case.

Civil No. 21-1230 (GMM)
Page – 40 –

For this reason, the Court will deny Plaintiffs summary judgment and dismiss Plaintiffs' FLSA claim against TFCI.

B.   <u>Supplemental Jurisdiction and the Commonwealth causes of action</u>

This Court has supplemental jurisdiction to hear state law claims when it has original jurisdiction over the action and the claims "form part of the same case or controversy." 28 U.S.C. § 1367(a). However, where "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350, n.7 (1988); *see also* <u>Jesus v. Town of Pembroke, NH</u>, 977 F.3d 93, 114 (1st Cir. 2020) ("We have held that a district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction, and absent certain circumstances inapplicable here, doing so is not an abuse of discretion.").

Given that Plaintiffs cannot sustain their federal question law claims and trial in this case has not yet been scheduled, the Court remands this case to State Court for final disposition on Plaintiffs' Puerto Rico law claims against TFCI. *See* <u>Pérez Arritola v. García Muñiz</u>, 2023 U.S. Dist. LEXIS 52202, at *8 (D.P.R. 2023)(*citing* <u>Labiosa-Herrera v. P.R. Tel. Co.</u>, 153 F.Supp.3d at

Civil No. 21-1230 (GMM)
Page – 41 –

551) ("the court exercised its discretion under § 1367(c)(3) to dismiss supplemental state law claims after the plaintiff's federal claims were disposed of early in the case"); *see also* <u>Caratini-Soto v. Puerto Rico</u>, 2023 U.S. Dist. LEXIS 237660, at *15 (D.P.R. 2023).

**V.    <u>CONCLUSION</u>**

For the reasons stated above, FEMA's *Motion for Summary Judgment* is **GRANTED** and Plaintiffs' *Motion for Summary Judgment* is **DENIED.** The FLSA claims against FEMA and TFCI are dismissed with prejudice. State law claims against TFCI are dismissed without prejudice. The case shall be remanded to State Court for final disposition on Plaintiffs' Puerto Rico law claims against TFCI. Judgment of dismissal shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, September 30, 2024.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE